775 So.2d 981 (2000)
Bruce KAMINESTER, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.
No. 4D00-685.
District Court of Appeal of Florida, Fourth District.
November 22, 2000.
Rehearing Denied February 5, 2001.
*982 Michael R. Manthei and Maria C. Montenegro of Broad and Cassel, Fort Lauderdale, for appellant.
Nancy W. Gregoire of Bunnell, Woulfe, Kirschbaum, Keller, Cohen & McIntyre, P.A., Fort Lauderdale, and Jonathan Brooks of Green, Murphy, Wilke & Murphy, P.A., Boca Raton, for appellee.
FARMER, J.
After State Farm paid a PIP provider's MRI bill of $2,900, it conducted an examination under oath of its insured as to the facts underlying the provider's claim. We *983 are told that its insured testified that he was not familiar with the company that had submitted the $2,900 bill (claimant) and that his MRIs were conducted by a different company at a different address.[1]
State Farm thereupon wrote the claimant and asked for a copy of the invoice submitted by the company actually providing the MRI services. At first claimant responded that such information was not within the ambit of section 627.736(6)(b).[2] After being pressed by State Farm, claimant ultimately responded that it leased the equipment used to provide the MRIs in question and, thus, there was no invoice from an MRI facility to the insured, adding that the terms of the lease between claimant and the owner of the MRI equipment were proprietary and confidential and would not be disclosed to State Farm.
At that point State Farm filed a pleading in the circuit court seeking discovery from claimant under section 627.736(6)(c).[3] Its petition, which was not verified or otherwise supported by an oath, in substance recited the foregoing facts, claiming that it "had reason to believe that [claimant] has done nothing more than refer State Farm['s] insured ... to an MRI facility in return for a profit."[4] If that is true, State Farm alleged, the claimant is not entitled to be paid under the PIP statute because claimant's "actions violate Florida Statutes and/or constitute patient brokering." Attached to the petition were a copy of the original claim submitted by the claimant and correspondence between the carrier and claimant seeking and refusing to supply information. State Farm prayed for an order requiring the corporate president of claimant to "submit to a deposition duces tecum to verify what, if any, amount is due [claimant]." The petition also asked for costs and attorney's fees under section 627.736(6)(c).
Respondent reacted to the petition by filing a motion to dismiss it for failure to state a cause of action.[5] The motion argued *984 that the statute in question, section 627.736(6)(c), does not authorize depositions duces tecum, that it merely allows the production of specified documents. The motion referred to the claim attached to the petition and stated that the claim reflects "the charge to the patient for the service in question." It then argued that State Farm already had all the documents to which it was entitled under section 627.736(6)(b). The motion also argued that State Farm had brought identical proceedings against respondent Kaminester, for claims involving other insureds, which had been assigned to other judges in the Circuit Court in Broward County and that two of them had already been dismissed on motion for the reasons argued.
Respondent's motion was called up for hearing on the motion calendar. Other than the documents attached to the petition, no additional evidence was presented. Nonetheless, respondent in substance acknowledged that he had refused to provide State Farm with a copy of the lease relating to the MRIs in question, though insisting that such evidence was not within the sweep of the statutory discovery for PIP providers. The trial court denied the motion to dismiss and granted the petition for discovery, saying in part:
"State Farm received information that Open MRI in Hollywood performed the MRIs in question. State Farm requested that Mr. Kaminester, as President of IBK, provide the invoice from Open MRI. On two separate occasions, Mr. Kaminester's counsel denied State Farm's request on the grounds that IBK leased the equipment in question and, therefore, there was no `invoice' and that Section 627.736(6) did not allow for presuit discovery of IBK's lease documents."
The order closed with a command for Kaminester to "submit to a deposition duces tecum in order to verify what, if any, amount is due to IBK under [the] PIP policy." It is that order we confront today.
Both sides have joined in urging an opinion in this case. They argue that there is no appellate authority as to the meaning of the statutory provisions at issue and that there is an ongoing controversy among providers and PIP insurers as to the rights and obligations of everyone about the nature and extent of the discovery allowed under the statute, as well as the procedures for judicial intervention. For that reason we have extended what might have been a very brief statement of our decision and will proceed to address the issues.
We first address respondent's argument that the scope of discovery which a court can order under subsection (c) is limited to the production of documents specifically identified in subsection (b). Section 627.736(6) provides for informal discovery from the provider to the PIP insurer without resort to litigation. Omitting unnecessary words, subsection (b) expressly states that any PIP provider seeking payment from the PIP insurer:
"shall [upon request] by the insurer ... furnish forthwith a written report of the... treatment, dates, and costs of such treatment ... together with a sworn statement that the treatment or services rendered were reasonable and necessary... and permit the inspection and copying of ... its records regarding such ... treatment, dates, and costs of treatment."
The only document specifically identified by name in subsection (b) is the sworn statement, which must be prepared and furnished upon request. Otherwise, the documents that must be informally furnished are simply identified categorically as the claimant's "records regarding such... treatment, dates, and costs of treatment...." The kind of lease talked about by the provider in this case is surely within the locution "its records regarding ... *985 costs of treatment." Thus, even assuming that subsection (b) were alone controlling on what a court could order, it is obvious that the lease is well within this statutory text.
As it happens, however, the range of subsection (c) is all but identical. The power invoked under subsection (c) is to discover "facts about an injured person's... history, condition, or treatment, or the dates and costs of such treatment...." Simply put, a PIP insurer has a right to learn information about an insured's treatment and the costs of such treatment. The term "costs" would mean almost nothing if it were limited, as the provider argues, to the amount charged by the provider to its patient. The statute would in effect create a right to discover something the PIP carrier knows from the moment the claim is submitted: namely what the provider has charged for its services. The plain meaning of "costs" is obviously the expenses the provider itself incurred to charge what it has charged. PIP coverage is required of everyone who drives, but that is not a license for health care providers to charge whatever they want for their services. The right of the PIP carrier is to discover information as to what it actually cost the provider to provide the treatment or services. Consequently we have little trouble in deciding that IBK's lease is well within the meaning of the statutory discovery provision "the costs of such treatment."
As for the provider's argument that only production of documents is authorized by subsection (c), we point out that the legislature has used the legal term of art "discovery of facts". § 627.736(6)(c) ("In the event of any dispute regarding an insurer's right to discovery of facts about an injured person's earnings or about his or her history, condition, or treatment, or the dates and costs of such treatment, the insurer may petition a court of competent jurisdiction to enter an order permitting such discovery." [e.s.]). The term "discovery" is obviously borrowed from the Florida Rules of Civil Procedure, which describes "discovery" as follows:
"Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property for inspection and other purposes; physical and mental examinations; and requests for admission."
Fla.R.Civ.P. 1.280(a). When the legislature uses a legal term like "discovery", we will ordinarily attribute a meaning consistent with its legal meaning. See City of Tampa v. Thatcher Glass Corp., 445 So.2d 578, 580 n. 2 (Fla.1984) ("Terms of special legal significance are presumed to have been used by the legislature according to their legal meanings."); Davis v. Strople, 39 So.2d 468 (Fla.1949) (same). It should also be emphasized that section 627.736(6) authorizes discovery of "facts", not merely discovery of documents. If the legislature wanted to limit discovery to production of documents, it would have used different terminology.
Subsection (c) states that "the insurer may petition a court of competent jurisdiction to enter an order permitting such discovery." It goes on to require that "[t]he [discovery] order may be made only on motion for good cause shown,...." [e.s.] Ordinarily good cause is shown by evidence: an affidavit, documents, testimony under oath, etc. In this instance the initial pleading, which State Farm erroneously called a "petition,"[6] was *986 supported only by documents, namely the claim and correspondence between the claimant and the carrier as to discovery. The petition itself was not verified or otherwise supported by an oath. That might have been fatal in another case, but here it was not.
As we have just seen, the process envisioned by the text of the statute begins with an informal production of documents and information by the provider upon simple request of the PIP insurer. We think an outright refusal to supply anything, as was the case here, establishes the necessary good cause for a court to order discovery under section 627.736(6)(c). Thus while there is no evidentiary support for some of the "findings" of the circuit judge in her order requiring a discovery deposition,[7] there is no dispute as to the essential fact that IBK utterly refused to furnish anything when asked to do so.
We dispose of the remaining issues briefly. The fact that State Farm promptly paid the claim and then sought the discovery does not deprive it of its right to ascertain whether the claim was improper in some respect. If it has overpaid, surely it is entitled to recover the extent of any overpayment from a provider whom it has promptly paid in accordance with its statutory obligation. The fact that the statute was recently amended to extend the time of the payment obligation until after a claimant furnishes discovery[8] does not alone generate an abandonment of the carrier's right to recover an overpayment. Finally there is no collateral estoppel effect arising from State Farm having been denied court-ordered discovery in cases involving other insureds.
We conclude that State Farm met its burden. Because the discovery ordered is well within the statute, we find no error and the order is hereby
AFFIRMED.
GUNTHER and STONE, JJ., concur.
NOTES
[1] The claim was actually submitted by IBK Enterprises, Inc., whose address was in Coral Springs. Apparently its insured had stated that the MRIs were performed by a different facility in Hollywood. Appellant Kaminester is IBK's corporate president.
[2] See § 627.736(6)(b), Fla. Stat. (1999) ("Every physician, hospital, clinic, or other medical institution providing, before or after bodily injury upon which a claim for personal injury protection insurance benefits is based, any products, services, or accommodations in relation to that or any other injury, or in relation to a condition claimed to be connected with that or any other injury, shall, if requested to do so by the insurer against whom the claim has been made, furnish forthwith a written report of the history, condition, treatment, dates, and costs of such treatment of the injured person, together with a sworn statement that the treatment or services rendered were reasonable and necessary with respect to the bodily injury sustained and identifying which portion of the expenses for such treatment or services was incurred as a result of such bodily injury, and produce forthwith, and permit the inspection and copying of, his or her or its records regarding such history, condition, treatment, dates, and costs of treatment.").
[3] See § 627.736(6)(c), Fla. Stat. (1999) ("In the event of any dispute regarding an insurer's right to discovery of facts about an injured person's ... treatment, or the dates and costs of such treatment, the insurer may petition a court of competent jurisdiction to enter an order permitting such discovery. The order may be made only on motion for good cause shown and upon notice to all persons having an interest, and it shall specify the time, place, manner, conditions, and scope of the discovery. Such court may, in order to protect against annoyance, embarrassment, or oppression, as justice requires, enter an order refusing discovery or specifying conditions of discovery and may order payments of costs and expenses of the proceeding, including reasonable fees for the appearance of attorneys at the proceedings, as justice requires.").
[4] The petition was designated: "Petition for Pure Bill of Discovery." The text of the pleading makes clear, however, that it was brought under section 627.736(6)(c). It named Bruce Kaminester in his capacity as president of IBK Enterprises, Inc., as the respondent. In the trial court Kaminester argued that the corporate entity was the actual claimant and that therefore the wrong person was named in the petition for discovery.
[5] See Fla.R.Civ.P. 1.140(b)(6).
[6] See Fla.R.Civ.P. 1.100(a) ("There shall be... when so designated by a statute or rule, a petition ..."). In this instance the statute specifies a "motion", not a petition. The obvious import is that the legislature intended that this procedure be summary and not complicated.
[7] We refer to the court's finding that "State Farm received information that Open MRI in Hollywood performed the MRIs in question," and to State Farm's allegation of "patient brokering". The argument of counsel at a hearing ordinarily does not supply evidence, when evidence is due.

Of course, at a motion calendar hearing where each side has no more than 5 minutes, there could hardly be much in the way of testimony. In providing that court-ordered discovery be available by motion upon good cause shown, it appears that the legislature had in mind a showing of good cause primarily by documents. These might include a transcript of an examination under oath by the insured, copies of claims forms, correspondence, invoices, affidavits, and the like. Here the petition attached IBK's claim and copies of the correspondence between State Farm and the claimant.
[8] See § 627.736(6)(b), Fla. Stat. (1999) ("If an insurer makes a written request for documentation under this paragraph within 20 days after having received notice of the amount of a covered loss under paragraph (4)(a), the insurer shall pay the amount or partial amount of covered loss to which such documentation relates in accordance with paragraph (4)(b) or within 10 days after the insurer's receipt of the requested documentation, whichever occurs later." [e.s.] ).